UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 20-24470-CIV-WILLIAMS

ALLIED WORLD ASSURANCE
COMPANY (U.S.), INC.,

    Plaintiff,

vs.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

    Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on the Parties' cross Motions for Summary Judgment. (DE 58; DE 61.) For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

This case is about a construction project on a water treatment facility. Plaintiff Allied World Assurance Company (U.S.), Inc.'s ("***Plaintiff***") First Amended Complaint against Defendant Travelers Property Casualty Company of America ("***Defendant***") asserts claims for (1) declaratory judgment and (2) breach of contract. (DE 11.)

The following facts have been summarized from the Parties' cross motions and are not in dispute. In 2016, Garney Wharton Smith, a Joint Venture Committed to Serving the NW Communities ("***GWS***") entered into an agreement with the Board of County Commissioners of Hillsborough County, Florida (the "***County***") for the design and construction of an expansion of the Northwest Regional Water Reclamation Facility (the "***Project***") in Westchase, Florida. The Project required GWS to design and construct

concrete basins (the "**Basins**") capable of holding water during the water treatment process. The Basins were comprised of reinforced concrete slabs and wall panels that met at various expansion and control joints. While these joints were intended to allow some movement of the walls, the walls were to remain watertight. Within the joints between adjoining wall panels were horizontal waterstops, that is, 6-to-9-inch-wide strips of polyvinyl chloride (PVC) that span the entire length of each joint to prevent the passage of liquid through the joint. The Basins relevant to the instant case are the Flow Equalization Basin ("**FEQ Basin**"), the Biological Nutrient Removal Basin ("**BNR Basin**"), and the Chlorine Contact Chamber ("**CCC Basin**").

As part of the Project, GWS was required to conduct leak tests of the Basins. A leak test was conducted on the FEQ Basin in April of 2018 (the "**Leak Test**"). The Leak Test was properly performed by GWS in accordance with the governing specifications mandated by the Contract with the County. Before the April 2018 Leak Test, the wall panels of the FEQ Basin were "in-plane" and had not experienced any deflection[1], nor had the waterstops experienced any tearing or other damage. But the Leak Test failed, and some of the wall panels and waterstops were permanently damaged. An investigation of the causes of the foregoing displacement of wall panels and damage to waterstops revealed that the FEQ Basin suffered from design and/or construction deficiencies. The Parties' experts agree that the design deficiencies rendered the wall panels of the FEQ Basin susceptible to excessive, differential deflection when the basin was filled with water

---

[1] Differential deflection is the deflection (movement) of one component in a different direction relative to the deflection (movement) of an adjacent component. (DE 55 ¶ 12 n.1.) For example, if one wall panel moves outward and an immediately adjacent wall panel moves inward, the two panels are said to have deflected differentially. (*Id.*)

to its normal liquid level line. Specifically, the wall panels lacked structural continuity across the joints.

The cost to demolish and rebuild the FEQ Basin was $2,627,193.31. Included in that sum is $960,000 paid to Baker Concrete Construction, Inc. ("**Baker**") to rebuild the FEQ Basin walls after demolition. Baker agreed to give a $467,057.21 discount to construct the walls—a discount that was negotiated to account for Baker's potential liability for the failure. The FEQ Basin was satisfactorily repaired.

GWS was a named insured on two insurance policies: (1) an Allied "Contractor's Professional and Pollution Liability Policy" (the "**Allied Policy**"); and (2) a Travelers Policy that includes a "Construction Pak – Builders' Risk Coverage Form" (the "**Travelers Policy**"). GWS submitted claims to both insurance companies, and both claims were denied. GWS filed a Civil Remedy Notice of Insurer Violation ("**CRN**") with the Florida Department of Financial Services calling Allied's non-payment actionable bad faith. Ultimately, Allied paid $1,950,000 directly to and on behalf of GWS in response to the GWS Claim. Allied now sues Travelers, as subrogee and/or assignee of GWS, seeking a declaratory judgment that Travelers has a duty to indemnify GWS for the roughly $3,500,000 in losses and remediation expenses allegedly suffered and/or incurred by GWS.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251−52).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323−24 (1986). Thus, Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant.  *See Anderson*, 477 U.S. at 252.

### III.   DISCUSSION

Plaintiff seeks declaratory judgment that the Travelers Policy provides coverage for its claim, and Travelers' denial of the claim constitutes a breach of the Travelers Policy.

(DE 11.) However, the Travelers Policy does not extend to design deficiencies and, as conceded to by Plaintiff, "the existence of the design deficiencies is uncontested in this case." (DE 61 at 9.) Because the Travelers Policy expressly excludes coverage for losses resulting from defective design, because Plaintiff's loss resulted from a defective design, and because there are no exceptions to the bar on coverage, Defendant is entitled to judgment as a matter of law.

### A. The Relevant Provisions of the Traveler's Policy

The Travelers Policy excludes any loss or damage arising out of a design defect (the "**Design Defects Exclusion**"). The Design Defects Exclusion provides:

> 4. We will not pay for loss or damage caused by or resulting from faulty, inadequate or defective:
>
>    . . .
>    b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction;
>
>    . . .
>    of part or all of any property on or off the job site described in the Declarations.

(DE 55-4.)

Nonetheless, the Traveler's Policy does cover certain losses that are otherwise excluded (the "**Covered Cause of Loss Provision**"). The Covered Cause of Loss Provision provides:

> If an excluded cause of loss listed in Paragraph 4.a. through 4.d. above, results in a Covered Cause of Loss, we will pay for the resulting loss or damage caused by that Covered Cause of Loss. But we will **not** pay for:
>
> (1) **Any cost of correcting** or making good the fault, inadequacy or **defect** itself, including any cost incurred to

5

>     tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect; or
>
> (2) Any **resulting loss** or damage to the property that has the fault, inadequacy or **defect** until the fault, inadequacy or defect is corrected.

(*Id.* (emphasis added).)

### B. Plaintiff's Loss is Not Covered under the Travelers Policy

In a declaratory action, "[i]f the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are exclusions from the policy's coverage, the insurer is not obligated to defend or indemnify the insured." *Transcon. Ins. Co. v. Ice Sys. of Am., Inc.*, 847 F. Supp. 947, 949–50 (M.D. Fla. 1994). "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001).

It is undisputed that the Basins were defectively designed.[2] Additionally, the existence and application of the Design Defects Exclusion is undisputed. Therefore, Plaintiff could only survive summary judgment if it could prove that the exclusion does not bar its claim and the loss is covered under either the concurrent cause doctrine or the

---

[2] As noted previously, both Parties' experts agree that the FEQ Basin was defectively designed. (DE 58-2 at 29 (Defendant's expert, Donna Friis, stated in her report that "portions of the walls in the FEQ Basin were damaged and permanently deflected because the structural design of the FEQ Basin did not properly account for the project-specific loads and building code requirements"); DE 57-7 at 14 (Plaintiff's expert, Carl J. Larosche, stated in his report that "the lack of reinforcement across the expansion and control joints [i.e., the design defect,] allowed for the large differential deflections experienced during the hydraulic leak testing").)

ensuing loss exception. (DE 61.) However, Plaintiff's attempt to prove coverage under either theory relies on the narrative that two independent factors—the design deficiency and the hydrostatic pressure, i.e., the Leak Test—caused two separate losses to the FEQ Basin's wall panels and waterstops. (*Id.*) Contrary to this version of events, Defendant posits that "the undisputed facts point to only one loss event (deflection of wall panels and damage to waterstops in the FEQ Basin during the required performance evaluation) and only one cause of that loss event (defective design and/or construction that rendered the wall panels susceptible to excessive movement when tested under normal operating conditions)." (DE 58 at 12.)

1. The Concurrent Cause Doctrine

Where a loss is caused by two independent acts—and at least one of which is covered under the insurance, the concurrent cause doctrine covers the loss, "even if one of the causes is excluded from coverage." *Wallach v. Rosenberg*, 527 So. 2d 1386, 1388 (Fla. 3d DCA 1988). Plaintiff states that its loss was caused by two separate acts: the Basin's defective design (excluded) and the hydrostatic pressure created by the Leak Test (not excluded). (DE 61.) Therefore, Plaintiff contends that, pursuant to the concurrent cause doctrine, its entire loss is covered by the Travelers Policy because, even if the design defect is excluded from coverage, the hydrostatic pressure is a covered, concurrent cause. (*Id.*)

Plaintiff's argument is faulty. The defective design of the FEQ Basin and the hydrostatic pressure created by the Leak Test are not independent and unrelated acts. The Leak Test was required by the County to test the watertightness of the Basin. (DE 55

¶ 8–9.) Indeed, the Basins could not be deemed completed until they were successfully subjected to a Leak Test. (*Id.*) Moreover, the Leak Test "was properly performed by GWS in accordance with the specifications mandated by the Contract with the County." (*Id.* at ¶ 23.) The Leak Test—and the resulting hydrostatic pressure—was a required act that merely exposed the FEQ Basin's defective design rather than independently contributing to the destruction of the FEQ Basin. Thus, Plaintiff cannot assert a separate claim for the damage resulting from the Leak Test. *Cf. Small v. Amgen, Inc.*, 2 F. Supp. 3d 1292, 1299 (M.D. Fla. 2014) ("In Florida, no separate duty or claim exists for testing or inspecting a product because it is part of the manufacturer's duty to design a product with reasonable care; thus, it is subsumed in claims for defective design. . . ."); *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1302 (M.D. Fla. 2011); *Fisher v. Bumbo Int'l Tr.*, No. 1:14-CV-22209-UU, 2014 WL 12026083, at *15 (S.D. Fla. Aug. 20, 2014).

    2. The Ensuing Loss Exception

The Ensuing Loss Exception requires coverage for a loss involving an excluded defect where such defect "results in a Covered Cause of Loss."[3] Put another way, the Ensuing Loss Exception requires there to be two separate causes of loss—one excluded and one covered—with the excluded cause of loss resulting in the "Covered Cause of Loss." (DE 55-4.) Only in that specific situation, where the "resulting loss or damage [was] caused by that Covered Cause of Loss," would the ensuing loss exception apply.

Plaintiff contends that the damage to the waterstops is an ensuing loss covered by the Travelers Policy. (DE 61 at 15.) Specifically, Plaintiff maintains that the "design defect

---

[3] The Travelers Policy defines "Covered Cause of Loss" as "risks of direct physical loss unless the loss is excluded."

8

that the Parties' experts agree existed – that the FEQ Basin panels lacked sufficient reinforcing to counteract the hydrostatic loads exerted when filled to capacity – resulted in a loss to a non-defective component of the structure—the waterstops." (*Id.* at 18.) However, the wall panels and waterstops are merely component parts of the FEQ Basin, which failed as a whole.

Even if Plaintiff could somehow "deconstruct" the FEQ Basin to demonstrate that the damage to the FEQ Basin's waterstops—which are embedded within the expansion and control joints connecting the wall panels that, combined, make up the FEQ Basin—is separate from the damage to the FEQ Basin's wall panels (i.e., a resulting loss), the ensuing loss exception still does not apply because there is no Covered Cause of Loss. Plaintiff's argument presupposes that the design deficiencies and hydrostatic pressure were distinct and separate loss events. However, the damage caused during the Leak Test was not separate from the damage due to the design deficiencies; rather the Leak Test was the catalyst for discovering the design deficiencies. Because the only cause of loss, the defective design, is an excluded cause of loss, the loss to the FEQ Basin—including damage to both its wall panels and waterstops—is excluded.

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 58) is **GRANTED**. Plaintiff's Motion for Summary Judgment (DE 61) is **DENIED**. This case is **CLOSED**. All other pending motions are **DENIED AS MOOT**. The Court will separately enter final judgment.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>16th</u> day of September, 2022.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE